**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

UNITED STATES OF AMERICA,        :

        :      09 Cr. 765 (RMB)

    - against -      :

        :      **DECISION & ORDER**

TERRANCE FORTE,        :

        Defendant.     :

------------------------------------------------------------x

       This Decision & Order resolves Defendant Terrance Forte's <u>pro se</u> motion for compassionate release, dated February 10, 2021 ("Compassionate Release Motion" or "Motion"). For the reasons stated below, Mr. Forte's motion is respectfully denied.[1]

### I.   <u>Background</u>

       On October 12, 2010, Forte, who at the time was 29 years of age, pleaded guilty to conspiracy to distribute and possess with intent to distribute fifty grams or more of crack cocaine, in violation of 21 U.S.C. § 846. <u>Plea Hr'g Tr.</u> at 14:8-14. Forte's offense level was 34; his criminal history category was VI; and his Sentencing Guidelines range was 262 to 327 months, with a statutory mandatory minimum sentence of 120 months. <u>Sentencing Tr.</u> at 3:9-14. On May 22, 2013, the Court sentenced Forte to 140 months' imprisonment, to be followed by 10 years of supervised release. <u>Id.</u> at 17:8-9.

       Forte is incarcerated at FCI Gilmer in Glenville, West Virginia. He has served 107 months or 76% of his 140-month sentence. <u>Gov't Opp.</u> at 4. His projected release date is April 11, 2023. <u>Id.</u> at 6.

### II.   <u>Forte's Motion for Compassionate Release</u>

       In his Motion, Forte contends that: **(i)** "[his] contraction of COVID-19 and . . . the serious health complications [he] faces . . . present[] an 'extraordinary and compelling reason' warranting a reduced sentence." <u>Def. Mot.</u> at 5, 7, 10; **(ii)** "the spread [of COVID-19] is growing out of control at FCI Gilmer -- leaving Forte to face [a] potentially life-threatening risk . . . of becoming re-infected." <u>Id.</u> at 7, 10; **(iii)**

---

[1] **Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

"Forte is not a danger to society . . . . his drug offense [] did not involve any allegations of violence [and] Forte does not have a recent history of violence." Id. at 10-11; and **(iv)** "[t]he time that Forte [has] served is sufficient to satisfy the [§ 3553(a)] purposes of sentencing and . . . [he] has made significant efforts of self-improvement[] and rehabilitation since his imprisonment, as evidenced by his completion of extensive educational programs." Id. at 9, 11. The Motion includes a medical "Diagnostics Report" reflecting Forte's positive test result for COVID-19, dated November 9, 2020. It also includes a BOP report detailing Forte's "Education Courses" while incarcerated, dated February 8, 2021.

On March 8, 2021, the Government filed its opposition to Forte's Motion. It enclosed 168 pages of Forte's BOP medical records, dated February 18, 2017 to November 24, 2020. The Government also included Forte's BOP "Disciplinary Record," dated November 3, 2009 to April 3, 2020 and Forte's BOP "Inmate Profile." The Government argues that: **(i)** Forte's COVID-19 infection "does not qualify as an extraordinary and compelling reason [] for release. . . . he was asymptomatic, and he recovered without a problem." Gov. Opp. at 3, 15; **(ii)** "[Forte] has no real risk of contracting COVID-19 again, much less suffering serious consequences from it, and is, effectively, simply asking to be released early because he wants to be released early." Id. at 18-19; **(iii)** "Forte continues to be a significant danger to society[.] [He] has been a disciplinary nightmare in prison . . . He has gotten into fights, assaulted fellow inmates, possessed weapons, and manufactured alcohol in prison." Id. at 14, 18; and **(iv)** "The Section 3553(a) factors [] militate decisively against reducing his sentence." "[Although] Forte has taken some classes [in prison], . . . they have been few and [they] . . . do not nearly offset the concerns that this Court and anyone else should have" regarding Forte. Id. at 8, 18-19.

## III.   Legal Standard

"[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).

"Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies." *United States v. Williams*, 464 F. Supp. 3d 562, 565 (S.D.N.Y. 2020).

"When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Beniquez*, 2021 WL 260225, at *2 (S.D.N.Y. Jan. 26, 2021). "The defendant has the burden to show he is entitled to a reduction." *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

"[I]n deciding a compassionate release motion . . . [t]he Court [] looks to § 1B1.13 for guidance in the exercise of its discretion." *United States v. Rodriguez*, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020). "The district court has the discretion 'to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.'" *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

"[T]he Section 3553(a) factors and the danger [a defendant] poses to the community override any extraordinary and compelling reasons justifying his release." *United States v. Serrano*, 2020 WL 5259571, at *4 (S.D.N.Y. Sept. 3, 2020); *United States v. Roney*, 833 F. App'x 850 (2d Cir. 2020).

"Where -- as here -- a defendant has contracted and recovered from coronavirus, courts in this district have declined to find extraordinary and compelling factors favoring release." *United States v. Wedd*, 2021 WL 1338754, at *2 (S.D.N.Y. Apr. 9, 2021).

## IV.    **Findings**

The Court finds as follows:

1. On November 9, 2020, Forte tested positive for COVID-19. See BOP Medical Records Ex. E at 1, 17. He was placed in isolation that same day. Id. at 3, 9. FCI Gilmer medical personnel took daily temperature readings and conducted "daily assessment[s] for any symptoms," including cough, shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, and nausea or vomiting. Id. at 1, 11. During these assessments, Forte did not complain of any symptoms and was diagnosed as "asymptomatic." Id. at 3, 11 ("[Patient reports] no: cough, shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, nausea or vomiting.").

**2.**   On November 24, 2020, medical personnel determined that Forte had recovered from COVID-19. <u>Id.</u> at 9. According to Forte, since recovering, he has "experienced serious health complications." <u>Def. Mot.</u> at 1. However, his medical records do not indicate that he has complained of COVID-19-related complications or that he has sought medical treatment since recovering. <u>See</u> <u>BOP Medical Records Ex. E</u> at 1-21; <u>see also</u> <u>Gov't Opp.</u> at 17-18 ("Forte [] does not identify a single [complication]. And this is for good reason: his medical records demonstrate that there are no . . . health complications." (citation omitted)).

**3.**   FCI Gilmer appears to have been able to control COVID-19 infections. As of April 21, 2021, there was only one active COVID-19 case at FCI Gilmer, out of a total inmate population of 1,498. <u>See</u> <u>COVID-19 Cases</u>, BOP; *United States v. Sewell*, 2021 WL 733823, at *5 (N.D. Ind. Feb. 24, 2021).

**4.**   As of April 21, 2021, 651 FCI Gilmer inmates had been fully vaccinated. <u>COVID-19 Vaccine</u>, BOP.

**V.**   <u>**Analysis**</u>

**(1)** <u>**Exhaustion of Administrative Remedies**</u>

On December 14, 2020, Forte wrote a letter to the Warden of FCI Gilmer "requesting compassionate release [because]: . . . I've served [the] majority of my sentence; [] I have less than 36 months before release; I am serving a non-violent offense; [and] I have a home plan which consists of a job, and a verified residence." <u>Gov't Opp.</u> at 10-11 (quoting <u>Def. Ltr. to Warden</u>). Forte does not appear to have said anything about COVID-19 in his December 14, 2020 letter to the Warden of FCI Gilmer. He appears to raise COVID-19 claims for the first time in his Compassionate Release Motion.

On December 31, 2020, the Warden responded to Forte's letter, stating: "The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. Accordingly, your [] request is denied." <u>Def. Mot. Ex. A</u>.

4

Any claims that were not presented to the Warden of FCI Gilmer but which are included in Forte's Motion are considered unexhausted and are, therefore, denied. *See United States v. Chappell*, 2020 WL 3415229, at *3 (S.D.N.Y. June 22, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden [that he presents] . . . in his compassionate release motion." (citation omitted)).[2]

**(2)  No Extraordinary and Compelling Circumstances**

Even if Forte had exhausted all of his administrative remedies, he has not met his burden of proving that extraordinary and compelling circumstances or the 18 U.S.C. § 3553(a) factors support his early release, as follows:

**First**, while Forte contracted COVID-19 at FCI Gilmer, he also quickly fully recovered. According to his BOP medical records, Forte was COVID-19 "asymptomatic" on November 9, 2020, and he was diagnosed "recovered" on November 24, 2020. See BOP Medical Records Ex. E at 9. "Where -- as here -- a defendant has contracted and recovered from coronavirus, courts in this district have declined to find extraordinary and compelling factors favoring release." *United States v. Wedd*, 2021 WL 1338754, at *2 (S.D.N.Y. Apr. 9, 2021). Similarly, in *United States v. Kosic*, 2021 WL 1026498 (S.D.N.Y. Mar. 17, 2021), the court held that: "[h]aving contracted the virus and recovered, [defendant's] reason for a sentence reduction -- namely, that it is necessary to protect his health -- is significantly less compelling. His risk of reinfection is extremely low. . . . On this record, [defendant] has failed to establish . . . an extraordinary and compelling reason warranting a sentence reduction." *Id.* at *3 (citations omitted); *see also United States v. Marley*, 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020).

**Second**, Forte's argument that "the spread [of COVID-19] is growing out of control at FCI Gilmer[,] leaving [him] to face a potentially life-threatening risk . . . of becoming re-infected" is similarly unpersuasive. For one thing, Forte's risk of reinfection "is extremely low." *United States v. Rodriguez-*

---

[2] Because Forte is proceeding pro se, the Court will assume arguendo that he raised his COVID-19 claims in his December 14, 2020 letter to the Warden of FCI Gilmer.

*Francisco*, 2021 WL 326974, at *2 (S.D.N.Y. Feb. 1, 2021). In addition, there is currently only one COVID-19 case at FCI Gilmer, reflecting a significant decrease in cases since Forte filed his Motion, when there were 254 infections. *United States v. Sewell*, 2021 WL 733823, at *5 (N.D. Ind. Feb. 24, 2021). "These numbers support the conclusion that FCI Gilmer has managed the risk in an acceptable manner." *Id.* And, over 600 inmates at FCI Gilmer had been vaccinated as of April 21, 2021, which should further reduce Forte's risk of reinfection. *See United States v. Davis*, 2021 WL 1016115, at *3 (S.D.N.Y. Mar. 17, 2021).

### (3) The § 3553(a) Factors -- Which Include Dangerousness -- Weigh Against Compassionate Release

A sentence reduction would be inconsistent with the § 3553(a) sentencing factors, including without limitation, protecting the public from further crimes. As the Court stated at Forte's sentencing, a 140-month sentence was appropriate "given the seriousness of the offense, . . . the need to promote respect for the law, provide a just punishment, afford adequate deterrence to criminal conduct, [and] protect the public." See Sentencing Tr. at 19:5-11; *see also United States v. Rice*, 2020 WL 4505813, at *4 (S.D.N.Y. Aug. 5, 2020).

**First**, while in prison, Forte has accumulated a significant disciplinary record. He has been sanctioned at least **25** times by the BOP for: "fighting with another person" nine times; "assaulting [another inmate] with serious injury"; "assaulting [another inmate] without serious injury" four times; "possessing a dangerous weapon"; "attempting to make a weapon"; "destroying property" three times; "possessing drugs/alcohol" three times; "refusing to obey an order"; and "failing to follow safety regulations." Disciplinary Records Ex. F at 1-8. His most recent disciplinary infraction was in March 2020 for "possessing drugs/alcohol." Id. at 1. As the Government persuasively contends, Forte's "severe and frequent disciplinary issues" make clear that "[he] continues to be a significant danger to society." Gov't Opp. at 18, 21.

In *United States v. Whitley*, No. 04-cr-1381 (S.D.N.Y. May 28, 2020), the defendant, much like Forte, had accumulated numerous disciplinary infractions while in prison, including: "assaulting [another

6

inmate] without serious injury"; "use of drugs/alcohol"; and "failing to follow safety regulations." *Id.* at 4. The court ruled that in light of the defendant's lengthy disciplinary record while in BOP custody, and "specifically his participation in an assault on a fellow inmate," he posed a danger to the community. *Id.*; *see also United States v. Rosa*, 2020 WL 5774909, at *2 (S.D.N.Y. Sept. 28, 2020) ("Defendant had received several disciplinary sanctions while incarcerated, including for . . . fighting. Taken together, the Court finds that [defendant] would pose a danger to his community if released.").

**Second**, Forte was more than a participant in the drug-trafficking organization as described at the May 22, 2013 sentencing. See Sentencing Tr. at 5:3-11. He was a "leader," and facilitated the production and distribution of crack cocaine, an illegal drug that "leads to both violence and [the] destruction of health in the community." *United States v. Marrero*, 2020 WL 7079483, at *5 (S.D.N.Y. Dec. 3, 2020); see also PSR ¶¶ 25, 28. He spent four years engaging in this conduct. Sentencing Tr. at 14:16-19; PSR ¶ 9. To grant Forte early release would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment.

In *United States v. Batista*, 2020 WL 3249233 (S.D.N.Y. June 16, 2020), where the defendant was, like Forte, the leader of a conspiracy to distribute crack cocaine, the court found that "the underlying conduct that led to [defendant's] incarceration . . . reflects an individual who is accustomed to distributing controlled and highly addictive substances in his community[.] Modifying [defendant's] term of imprisonment . . . would disserve the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, [or] provide just punishment." *Id.* at *4; *see also see also United States v. Miller*, 2020 WL 5259065, at *5 (D. Conn. Sept. 2, 2020) ("[Defendant] was a leader in the production and sale of large quantities of [] crack cocaine[.] The purposes of sentencing -- including just punishment -- would not be served if he were released at this time.").

**Third**, as the Court noted at sentencing, Forte has "an extensive criminal history beginning at the age of 13," a criminal history category of VI, and a designation of "Career Offender." Sentencing Tr. at 5:1-2, 5:20-22; see also Gov't Opp. at 4 ("Forte spent virtually his entire life committing serious

crimes."). The underlying crime in this case was Forte's ninth conviction, including his sixth conviction involving weapons or drugs and his fourth felony. And, he committed the instant offense while on parole. PSR ¶¶ 111. To release Forte now would afford insufficient deterrence and would fail to protect the public from further crimes.

In *United States v. Hall*, 2020 WL 7343023 (S.D.N.Y. Dec. 11, 2020), "the instant conviction was Defendant's ninth and his fifth felony. Four of his priors involved weapons or violence. He ha[d] violated parole . . . and [was] designat[ed] a career offender." *Id.* at *2. Based upon these facts, the court held that: "[t]o let Defendant out would insufficiently deter Defendant and others, and . . . perhaps most importantly, would not protect the public from further crimes." *Id.*; *see also United States v. King*, 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) ("Prior significant sentences did nothing to deter him [and] . . . early release would not suffice to protect the public from further crimes.").

**Finally**, the Court acknowledges and commends Forte's efforts at utilizing resources available to him in prison, including participation in classes on "resume writing," "interview skills," and "career employment." See Def. Mot. Ex. C at 1. The Court encourages Forte to continue to pursue these programs and any others that would aid in his rehabilitation. *See United States v. Carter*, 2020 WL 3051357, at *3 n.7 (S.D.N.Y. June 8, 2020).

## VI.   Conclusion & Order

The Government's request [Dck. # 619] to file Exhibits A-G (BOP records) under seal is granted. The Defendant's Motion for Compassionate Release [Dck. # 613] is respectfully denied.

Dated: New York, New York
         April 22, 2021

_____
**RICHARD M. BERMAN, U.S.D.J.**